# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA FRAHER, | Case No. 1:13-cv-01849-SKO (PC) |
| Plaintiff, | SECOND SCREENING ORDER DISMISSING ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM UNDER SECTION 1983 |
| v. | |
| ROBERT MITCHELL, et al., | (Doc. 15) |
| Defendants. | |

### **Second Screening Order**

### I.  **Procedural History**

Plaintiff Cecilia Fraher ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on November 14, 2013. On May 20, 2014, the Court dismissed Plaintiff's complaint, with leave to amend, for failure to state a claim. 28 U.S.C. § 1915A. Plaintiff filed a first amended complaint on July 28, 2014, and a second amended complaint on May 4, 2015.

### II.  **Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),

1  (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court
2  shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to
3  state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

4  A complaint must contain "a short and plain statement of the claim showing that the
5  pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not
6  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
7  conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937
8  (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and
9  courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572
10 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual
11 allegations are accepted as true, legal conclusions are not.  *Iqbal*, 556 U.S. at 678.

12 Under section 1983, Plaintiff must demonstrate that each defendant personally participated
13 in the deprivation of her rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  This
14 requires the presentation of factual allegations sufficient to state a plausible claim for relief.  *Iqbal*,
15 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  Prisoners
16 proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and
17 to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)
18 (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the
19 plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

20 **III.    Discussion**
21     **A.    Allegations**
22         **1.    Background**
23 Plaintiff's claims arise from past events at Central California Women's Facility ("CCWF")
24 in Chowchilla, California, where she was incarcerated until early 2014.  Plaintiff seeks damages
25 from Dr. Robert Mitchell, Chief Physician/Surgeon; P. Fontanilla, R.N. and Community Liaison;
26 and Warden D. K. Johnson.  Plaintiff also seeks injunctive relief, but this form of relief is not
27
28

available given that Plaintiff is no longer incarcerated at CCWF.[1] 18 U.S.C. § 3626(a)(1)(A); *Alvarez v. Hill*, 667 F.3d 1061, 1063-64 (9th Cir. 2012); *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991).

The underlying nature of Plaintiff's claims remains unchanged in her second amended complaint. In early 2014, Plaintiff was transferred from CCWF to California Institution for Women ("CIW") in Corona, a transfer she neither sought nor desired. As a result of Plaintiff's transfer, she is no longer being followed by cardiac specialists at University of California, Davis. Plaintiff does not have a constitutional right to be housed at any particular facility, however, *Meachum v. Fano*, 427 U.S. 215, 224-25, 96 S.Ct. 2532 (1976); *see also Olim v. Wakinekona*, 461 U.S. 238, 244-45, 103 S.Ct. 1741 (1983), and while she has a right to adequate medical care, including specialty care if necessary, that right does not extend to selecting the physicians of her choice or to remaining with a particular physician, specialist or otherwise, *Colwell v. Bannister*, 763 F.3d 1060, 1065-66 (9th Cir. 2014); *Snow v. McDaniel*, 681 F.3d 978, 985-87 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Hamilton v. Endell*, 981 F.2d 1062, 1066-67 (9th Cir. 1992) (abrogated in part on other grounds by *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001)). In an effort to plead around what are non-viable bases for constitutional claims, Plaintiff alleges that she was transferred in retaliation against her for filing a civil rights suit and that CCWF staff placed her life in danger by transferring her, because her transfer led to the discontinuation of care by the UC Davis specialists. For the reasons which follow, Plaintiff's allegations do not support claims for relief under the First Amendment or the Eighth Amendment.

///

///

---

[1] The medical care Plaintiff is receiving at her current institution in Corona, California is not at issue in this action. To the extent Plaintiff wishes to initiate a challenge to the propriety of decisions currently being made by medical staff at California Institution for Women, she must do so in the Central District of California, or in Riverside County Superior Court. 28 U.S.C. §1391(b); *see Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986) (court may raise defective venue sua sponte).

### 2. **Defendant Mitchell**

Plaintiff alleges that in January 2010, she filed case number 1:10-cv-00951-LJO-MJS (PC) *Fraher v. Heyne, et al.*, a civil rights suit against Defendant Mitchell, who was her primary care physician at the time.[2]

On June 18, 2013, Plaintiff's medical status was classified as "totally disabled-high risk." (2nd Amend. Comp., p. 4.) On July 9, 2013, a memorandum entitled "Transfer of High Medical Risk Inmates to Appropriate Intermediate Medical Care" was issued. (*Id.*, p. 4 & Ex. A, p. 14.) Pursuant to the memo, which effected a state-wide policy change, CIW was designated as the facility that would provide intermediate medical care for female high medical risk inmates. (*Id.*, Ex. A.) In August 2013, Plaintiff was told she was going to be transferred to CIW, and she expressed her concern about transferring to Captain Parks, given she was receiving care by cardiac specialists at UC Davis.[3] Captain Parks postponed the proceeding and requested that Defendant Mitchell, who was the Acting Chief Medical Officer, place a temporary medical hold on Plaintiff.

On August 29, 2013, Correctional Counselor Mills called Plaintiff to her office and read Plaintiff an email from Defendant Mitchell to Captain Parks. Defendant Mitchell refused to place a medical hold on Plaintiff and "suggested" that "she would have a better qualified selection of specialists in So. California." (*Id.*, p. 5.) Plaintiff alleges that this suggestion is "inane" because the specialists treating her at UC Davis teach other specialists in the field, and that Defendant Mitchell's response was devoid of reason unless he was actually covering up a retaliatory motive. (*Id.*) Plaintiff further alleges that Defendant Mitchell's refusal to place a temporary medical hold on her violated prison policy, which provides in relevant part that one criterion for placement of a temporary medical hold includes "follow-up with current consulting specialist is medically necessary." (*Id.*, p. 5 & Ex. B, p. 35.)

---

[2] Although Plaintiff alleges that the litigation became "active" in February 2013, the Court takes judicial notice of the facts that the defendants filed an answer on June 18, 2012, and that a scheduling order was filed on July 5, 2012. (Doc. 15, 2nd Amend. Comp., court record p. 5.) On June 12, 2014, the Court granted Defendants' motion for summary judgment and the case is currently on appeal.

[3] In her original complaint, Plaintiff explained she was appearing before the unit classification committee for an annual classification review when she was informed of her pending transfer.

Plaintiff alleges that as her primary care physician between 2009 and 2011, Defendant Mitchell was well acquainted with her medical condition, which included her need to be seen and treated by cardiology specialists and to receive follow-ups every six months. While at CCWF, Plaintiff was seen by cardiology, a cardio-thoracic surgeon, and a pacemaker clinic, and Plaintiff alleges that the refusal to place a temporary medical hold on her constituted intentional interference with her medical treatment. Plaintiff also alleges that CIW has not yet complied with pending medical recommendations.

### 3. **Defendant Fontanilla**

Defendant Fontanilla, a registered nurse, was the community liaison responsible for obtaining medical appointments with specialists and coordinating the appointments with security and transportation. Plaintiff alleges that Defendant Fontanilla was aware of her medical condition.

In June 2012, Plaintiff filed a medical appeal regarding her cardiology appointments and the need for them to be timely scheduled to avoid injury. (*Id.*, Ex. A, pp. 25-26.) Plaintiff alleges that the first and second level responses to her appeal reveal the issues with Defendant Fontanilla giving rise to her claim, and that Defendant deceived high-risk nurse P. Tune.

Prior to Plaintiff's scheduled appointment on November 12, 2013, she contacted Dr. Onyeje, a primary care physician, on two dates: July 11, 2013 and October 9, 2013. On August 28, 2013, September 19, 2013, and October 9, 2013, RN P. Tune reminded Defendant Fontanilla, while Plaintiff was present, that Plaintiff was 100% dependent on her pacemaker and reiterated the seriousness of Plaintiff's appointments, as recommended by the specialist. On November 5, 2013, Defendant Fontanilla told RN Tune that she was unable to schedule Plaintiff's appointment until February 2014. Plaintiff alleges that Defendant Fontanilla was being deceptive, as Plaintiff has a medical record showing she had an appointment scheduled for November 12, 2013. (*Id.*, Ex. C, p. 41.) Plaintiff does not know if Defendant Fontanilla cancelled her appointment at the request of Defendant Mitchell or on her own accord, but Plaintiff ended up with an appointment at UC Davis in January 2014 and "this behavior" was described and admitted in the response to her appeal. (*Id.*, p. 8 & Ex. A, pp. 25-26.)

Plaintiff alleges that Defendant Mitchell and Defendant Fontanilla conspired to cancel her November 2013 appointment, believing they had eliminated her from their institution, and they did so to retaliate against her for filing a lawsuit and with deliberate indifference toward the risk of harm to her health.

### 4. Defendant Johnson

Finally, Plaintiff alleges that Warden Johnson was responsible for the custody and care of inmates at CCWF, and as the warden, she was aware of pending litigation against Defendant Mitchell. Plaintiff alleges that Defendant Johnson also denied Plaintiff's inmate appeal, finding it lacked merit. (*Id.*, Ex. A., pp. 17, 20-21.) Plaintiff alleges that based on her medical records which bear appeals office stamps, Defendant Mitchell was also aware of the warning that Plaintiff not miss any appointments or she would risk injury or death. (*Id.*, Ex. C, pp. 39-40.) Additionally, Defendant Johnson stated that Plaintiff's endorsement was a security issue and high medical risk inmates are housed at CIW. Plaintiff alleges, however, that only a percentage, and not the majority, of medical high-risk inmates are housed at CIW; and that Defendant Johnson's denial of her appeal demonstrates a causal connection between Johnson's actions and the violation of Plaintiff's right to medical care.

## B. Claims

### 1. First Amendment Retaliation Claim

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of [her] First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). "Mere speculation that defendants acted out of retaliation is not sufficient," *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014), and the plaintiff bears the burden of demonstrating "that there were no legitimate correctional purposes motivating the actions [s]he complains of," *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1985).

While the Court empathizes with Plaintiff's desire to remain at CCWF in order to remain under the care of the specialists at UC Davis, she does not have a constitutionally protected right to remain at CCWF and she may not create a viable retaliation claim through the mere assignment of ill motive to Defendants. *Pratt*, 65 F.3d at 806. Inmate have a protected right to litigate in federal court without retaliation, *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011), but Plaintiff's second amended complaint is devoid of any factual support for her bare assertion that her endorsement to CIW was motivated out of retaliation against her for filing case number 1:10-cv-00951-LJO-MJS (PC). To the contrary, Plaintiff's allegations and exhibits evidence the existence of a legitimate penological purpose underlying the August 2013 transfer endorsement: in July 2013, a state-wide policy was effected under which CIW was the facility designated to provide intermediate medical care for female high medical risk inmates, a category to which Plaintiff belonged. The mere fact that Plaintiff previously filed a lawsuit against Defendant Mitchell falls well short of supporting an inference that Plaintiff was transferred *because of* her lawsuit rather than because she was a high medical risk inmate and CIW had recently been designated as the institution to house such inmates. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). The allegation that not all inmates at CIW are high medical risk or that not all high medical risk inmates are at CIW does not alter this conclusion. Accordingly, the Court finds that Plaintiff fails to state a claim for retaliation, in violation of the First Amendment.

### 2. **Eighth Amendment Medical Care Claim**

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. *Snow*, 681 F.3d at 985; *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [her] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is

shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow*, 681 F.3d at 985 (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

Plaintiff's cardiac condition unquestionably constitutes an objectively serious medical need and the condition requires monitoring. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). However, Plaintiff's allegations and exhibits fail to support her claim that Defendants Mitchell and Johnson knowingly disregarded a serious risk of harm to Plaintiff's health, resulting in harm to her. As an initial matter, Defendant Johnson's involvement appears limited to addressing and denying Plaintiff's inmate appeal at the second level of review. However, Plaintiff's evidence does not support her claim that Defendant Johnson denied the appeal. Rather, the appeal was addressed on Johnson's behalf by a Chief Deputy Warden. That issue notwithstanding, the contents of the appeal provide no basis upon which to impose liability under the Eighth Amendment.

Defendant Mitchell's involvement appears limited to refusing to place a temporary medical hold on Plaintiff at Captain Park's behest. The exhibit Plaintiff relies upon does not support her claim that Defendant Mitchell was required to place the hold, but regardless, a violation of prison policy, by itself, does not support a claim under section 1983. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009); *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997). (2nd Amend. Comp., Ex. B., p. 35.)

Plaintiff's broader position that the only doctors qualified to treat her cardiac condition are located at UC Davis is simply untenable, and Plaintiff's new contention that CIW does not have contracts with other qualified providers in Southern California is of no assistance. The Court understands that Plaintiff was comfortable with her cardiac care team at UC Davis and did not want any changes, but her right to adequate medical care in prison does not encompass the right to choose her medical care providers or to remain in the care of any particular provider; and in this instance, there is no underlying factual support for her contention that her transfer to a prison

designated for high medical risk inmates violated the Eighth Amendment.  *Snow*, 681 F.3d at 985; *Wilhelm*, 680 F.3d at 1122; *Jett*, 439 F.3d at 1096); *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995)).  Accordingly, the Court finds Plaintiff fails to state a claim against Defendant Mitchell or Defendant Johnson with respect to the failure to stop her transfer to CIW.

Regarding Defendant Fontanilla, there is insufficient factual support for Plaintiff's claim that Defendant Fontanilla acted with deliberate indifference by knowingly disregarding a serious risk of harm to Plaintiff's health as related to Plaintiff's UC Davis appointments, *Farmer*, 511 U.S. at 847, or that Plaintiff suffered any injury as a result of the apparent change in her appointment from November 2013 to January 2014, *Wilhelm*, 680 F.3d at 1122; *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994); *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Therefore, Plaintiff also fails to state a claim against Defendant Fontanilla for violation of the Eighth Amendment.

### IV.    Conclusion and Order

Plaintiff's second amended complaint fails to state a claim upon which relief may be granted under section 1983.  Plaintiff was previously provided with notice of the deficiencies and an opportunity to amend, and based on the nature of the deficiencies, further leave to amend is not warranted.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012); *Lopez*, 203 F.3d at 1130.

Accordingly, this action is HEREBY ORDERED dismissed, with prejudice, for failure to state a claim under section 1983; and the Clerk of the Court shall enter judgment.

IT IS SO ORDERED.

Dated:    **June 28, 2015**                             **/s/ Sheila K. Oberto**
                                                                     UNITED STATES MAGISTRATE JUDGE